IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Chief Mad Bear Lineal Descendants, et. al., Jeff McLaughlin, Sr., | ) ) ) ) | |
| Plaintiffs, | ) ) ) | **ORDER AND REPORT AND RECOMMENDATION** |
| vs. | ) ) | |
| Col. John Henderson, P.E. Distr. Cmdr, et. al, | ) ) ) | |
| Defendants. | ) ) | Case No. 1:16-cv-094 |

Before the court is an "Application to Proceed In Forma Pauperis without Prepaying Fees or Costs" filed by Jeff McLaughlin, Sr. ("McLaughlin") on April 25, 2016. Attached to the application is a proposed complaint. For the reasons set forth below, the undersigned grants the application and directs the Clerk's office to file the complaint. Additionally, the undersigned recommends that the court dismiss this action pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a cognizable claim.

I. **BACKGROUND**

McLaughlin seeks leave to initiate the above entitled action *in forma pauperis*. In his proposed complaint, he asserts ownership of the Missouri River and surrounding lands on behalf of Chief Mad Bear's lineal descendants, objects to implementation of the Pick-Sloan Plan and by extension the U.S. Army Corps of Engineers' management of the Missouri River system,[1] and

---

[1] "Pursuant to Section 9 of the Flood Control Act of 1944, Congress authorized the construction of all but one of the Missouri River main stem dams in accordance with the 'Pick Plan,' a Corps of Engineers' planning document which proposed navigational improvements and flood control, and the 'Sloan Plan,' a Bureau of Reclamation planning document which emphasized the use of water resources for irrigation in the upper basin states." North Dakota v. U.S. Army Corps of Engineers, 265 F. Supp.2d 871, 874 (D.N.D. 2003). "The combined plans are commonly referred to as

requests that the court temporarily enjoin construction of the Dakota Access Pipeline ("DAP")[2] pending a hearing to address "environmental injustices." Specifically, he asserts:

> The Previous 16 years, the Chief Mad Bear lineal descendants have tried to resolve the environmental injustice of the first man-made disaster from the 1944 Pick Sloan Act. The predecessors of the A.C.O.E. John Henderson were authorized to the 6 dams in the Missouri River.
> Now, 60 years later, both the (B.I.A.) Bureau of Indian Affairs, (SRST) Standing Rock Sioux Tribe have denied the Chief Mad Bear lineal descendants et. al. Their just compensation and basic necessities of a rehabilitation programs. Including but not limited to A.C.O.E. (P.L. 85-915 & P.L. 102-575).
> In resolving these issues, the ACOE, DAPL/ETP et. al. This federal temp. rest. order would justiciable rectify the irreparable harm that has been caused by their previous decisions to the people of this area and the Missouri River.
>
> * * *
>
> The Chief Mad Bear lineal descendants et. al are invoking their inherent right to the Missouri River and the surrounding lands. Which encompasses the 1851 and 1868 Treaty's at Fort Laramie, WY. Therefore, the present, Army Corps of Engineers (ACOE); Dakota Access Pipeline Energy Transfer (DAPL) LLC Partners (EP), have no authority to trespass on the aboriginal lands and the Missouri River that owenership belongs to the Sioux Nation. The irreparable harm and environmental damage caused by the 1944 Pick Sloan Act
>
> The previous 16 years, the Chief Mad Bear lineal descendants have tried to resolve the environmental injustice to the Missouri River and lands. In August 2015, the Standing Rock Sioux Tribal Court in Fort Yates, N.D. has decided against the Chief Mad Bear lineal descendants et. al. and later filed in Standing Rock Sioux Supreme Court. January 2016. Which upheld the lower court decision. Thus, exhausting any and all remedies. The Chief Mad Bear lineal descendants et. al. Are hereby seeking justice in the Federal Court level.
>
> * * *
> Requesting a federal temporary restraining order stopping the Dakota Access

---

the 'Pick-Sloan Plan.'" Id. "The plans set forth broad goals and objectives including flood control, hydro power, irrigation, navigation, wildlife, and recreation." Id.
   Congress authorized the Missouri River Main Stem Dam System by adopting the "Pick-Sloan Plan" in the Flood Control Act of 1944. Pursuant to this Congressional authorization, 6 dams and reservoirs were constructed along the Missouri River in Montana, North Dakota, South Dakota, and Nebraska. Id.

[2] DAP is a proposed oil pipeline connecting the Bakken and Three Forks production areas in North Dakota to existing pipelines in Illinois. <http://www.daplpipelinefacts.com>

> pipeline from building, constructing any oil pipeline. And the Army Corps of Engineers from deciding to issuing a permit for this project. Cease and desist if applicable until a court date is set to resolving the first man made disaster 1944 Pick Sloan Act/project.

(Docket No. 1-1) (errors in original).

## II. STANDARD OF REVIEW

Proceedings *in forma pauperis* are governed by 28 U.S.C. § 1915, which provides that the court may authorize the commencement of a suit without prepayment of fees by a person submitting a financial affidavit evincing an inability to pay. See 28 U.S.C. § 1915(a)(1). Notwithstanding financial eligibility, the court may dismiss a case at any time if it concludes the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2).

Federal Rule of Civil Procedure 8(a)(2) requires a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" To meet this standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In applying the standard, the court must accept the plaintiff's factual allegations as true. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). *Pro se* complaints must be liberally construed. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). However, in construing a pro se complaint, the court "will not supply additional facts, nor . . . construct a legal theory for plaintiff that assumes facts that have not been pleaded." Id. (citing Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## III. DISCUSSION

Based upon the financial information provided by McLaughlin, the undersigned concludes

that he is unable to pay the filing fee. Consequently, the undersigned shall grant McLaughlin's application to proceed *in forma pauperis* and direct the Clerk's office to file the complaint. This does not end the undersigned's analysis, however.

Absent more, McLaughlin's broad and conclusory pronouncement that Chief Mad Bear's lineal descendants own the Missouri River along with untold acres of "related lands" on which the U.S. Army Corps of Engineers and others are trespassing, vague reference to recent tribal court proceedings (presumably initiated by McLaughlin), and conclusory assertion that the Pick-Sloan Plan has been an environmental disaster do not constitute the basis for a cognizable claim. Consequently, the undersigned recommends that this action be dismissed pursuant to § 1915(e)(2).

Insofar as the court could conceivably construe McLaughlin's submissions as a request for an order temporarily restraining construction of the DAP, the undersigned recommends that it be denied.

Rule 65(b) of the Federal Rules of Civil Procedure addresses the subject of temporary restraining orders and provides in relevant part as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Courts have a general aversion to granting *ex parte* temporary restraining orders. It is well-established under federal law that a temporary restraining order is an emergency remedy which should only be issued in exceptional circumstances. The United States Supreme Court has recognized that a temporary restraining order is an "extraordinary and drastic remedy, one that

4

should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968 (1997); West v. Derby Unified School Dist. No. 260, 23 F. Supp.2d 1220, 1221 (D. Kan. 1998). It is only on rare occasions that an *ex parte* temporary restraining order is proper and then such "orders should be limited to preserving the status quo only for so long as is necessary to hold a hearing." First Technology Safety Systems, Inc. v. Depinet, 11 F.3d 641, 650 (6th Cir.1993) (citing Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974)). Under Rule 65(b) of the Federal Rules of Civil Procedure, a temporary restraining order may only be granted if it clearly appears from specific facts shown in affidavit(s) or by a verified complaint that "immediate and irreparable injury, loss, or damage will result."

It is unclear at this point whether the DAP is shovel-ready; there is nothing in McLaughlin's submissions to clue the court in on the pipeline's proposed route or to otherwise indicate whether the pipeline proponents have obtained all of the requisite easements and regulatory approvals and are ready to proceed with construction. Consequently, McLaughlin has not made a clear showing that time is of the essence and that exceptional circumstances exist to warrant the imposition of a remedy as drastic as a temporary restraining order. Moreover, he has not certified to the court "the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required." Fed. R. Civ. P. 65(b)(2). Finally, at the end of the day and perhaps more significantly, McLaughlin has not set forth a sufficient factual or legal basis for the issuance of any restraining order *ex parte* or otherwise.

## IV.   CONCLUSION AND RECOMMENDATION

The undersigned **GRANTS** McLaughlin's application to proceed *in forma pauperis* (Docket

No. 1) and directs the Clerk's office to file McLaughin's complaint. The undersigned further **RECOMMENDS** that the above-entitled action be **DISMISSED** without prejudice for failure to state a cognizable claim. Finally, insofar as McLaughlin is requesting a temporary restraining order, the undersigned **RECOMMENDS** that it be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 11th day of May, 2016.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court